# UNITED STATES DEPARTMENT OF DEFENSE ET AL. *v.* FEDERAL LABOR RELATIONS AUTHORITY ET AL.

No. 92–1223. Argued November 8, 1993—Decided February 23, 1994

488

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, STEVENS, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 504. GINSBURG, J., filed an opinion concurring in the judgment, *post*, p. 504.

*Christopher J. Wright* argued the cause for petitioners. With him on the briefs were *Solicitor General Days, Acting Solicitor General Bryson, Acting Assistant Attorney General Schiffer, Deputy Solicitor General Wallace, Leonard Schaitman,* and *Sandra Wien Simon.*

*David M. Smith* argued the cause for respondents. With him on the brief for respondent Federal Labor Relations Authority were *William R. Tobey, William E. Persina,* and *Pamela P. Johnson. Mark D. Roth, Charles A. Hobbie, Stuart A. Kirsch, Walter Kamiat,* and *Laurence Gold* filed a brief for respondent American Federation of Government Employees, AFL–CIO.*

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to consider whether disclosure of the home addresses of federal civil service employees by their employing agency pursuant to a request made by the employees' collective-bargaining representative under the Federal Service Labor-Management Relations Statute, 5 U. S. C. §§ 7101–7135 (1988 ed. and Supp. IV), would constitute a "clearly unwarranted invasion" of the employees' personal privacy within the meaning of the Freedom of Information Act, 5 U. S. C. § 552. Concluding that it would, we reverse the judgment of the Court of Appeals.

---

*\*Rossie D. Alston, Jr.,* filed a brief for the National Right to Work Legal Defense Foundation, Inc., as *amicus curiae* urging reversal.

*Gregory O'Duden* and *Elaine Kaplan* filed a brief for the National Treasury Employees Union as *amicus curiae* urging affirmance.

## I

The controversy underlying this case arose when two local unions[1] requested the petitioner federal agencies[2] to provide them with the names and home addresses of the agency employees in the bargaining units represented by the unions. The agencies supplied the unions with the employees' names and work stations, but refused to release home addresses.

In response, the unions filed unfair labor practice charges with respondent Federal Labor Relations Authority (Authority), in which they contended that the Federal Service Labor-Management Relations Statute (Labor Statute), 5 U. S. C. §§ 7101–7135 (1988 ed. and Supp. IV), required the agencies to divulge the addresses. The Labor Statute generally provides that agencies must, "to the extent not prohibited by law," furnish unions with data that are necessary for collective-bargaining purposes. § 7114(b)(4). The agencies argued that disclosure of the home addresses was prohibited by the Privacy Act of 1974 (Privacy Act), 5 U. S. C. § 552a (1988 ed. and Supp. IV). Relying on its earlier decision in *Department of Navy, Portsmouth Naval Shipyard, Portsmouth, N. H.,* 37 F. L. R. A. 515 (1990) *(Portsmouth),* application for enforcement denied and cross-petition for review granted *sub nom. FLRA* v. *Department of Navy, Naval Communications Unit Cutler,* 941 F. 2d 49 (CA1 1991), the Authority rejected that argument and ordered the agencies to divulge the addresses. *Department of Defense, Army*

---

[1] Local 1657 of the United Food and Commercial Workers Union represents a bargaining unit composed of employees of the Navy CBC Exchange in Gulfport, Mississippi. Local 1345 of respondent American Federation of Government Employees, AFL–CIO, represents a worldwide bargaining unit composed of employees of the Army and Air Force Exchange, which is headquartered in Dallas, Texas.

[2] Petitioners are the U. S. Department of Defense, U. S. Department of the Navy, Navy CBC Exchange, Construction Battalion Center, Gulfport, Mississippi, and the U. S. Department of Defense, Army and Air Force Exchange, Dallas, Texas.

*and Air Force Exchange Serv., Dallas, Tex.,* 37 F. L. R. A. 930 (1990); *Department of Navy,* 37 F. L. R. A. 652 (1990).

A divided panel of the United States Court of Appeals for the Fifth Circuit granted enforcement of the Authority's orders. 975 F. 2d 1105 (1992). The panel majority agreed with the Authority that the unions' requests for home addresses fell within a statutory exception to the Privacy Act. That Act does not bar disclosure of personal information if disclosure would be "required under section 552 of this title [the Freedom of Information Act (FOIA)]." 5 U. S. C. § 552a(b)(2). The court below observed that FOIA, with certain enumerated exceptions, generally mandates full disclosure of information held by agencies. In the view of the Court of Appeals, only one of the enumerated exceptions— the provision exempting from FOIA's coverage personnel files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U. S. C. § 552(b)(6) (Exemption 6)—potentially applied to this case. 975 F. 2d, at 1109.

In determining whether Exemption 6 applied, the Fifth ·Circuit balanced the public interest in effective collective bargaining embodied in the Labor Statute against the interest of employees in keeping their home addresses private. The court recognized that, in light of our decision in *Department of Justice* v. *Reporters Comm. for Freedom of Press,* 489 U. S. 749 (1989), other Courts of Appeals had concluded that the only public interest to be weighed in the Exemption 6 balancing analysis is the extent to which FOIA's central purpose of opening agency action to public scrutiny would be served by disclosure.[3] Rejecting that view, however, the

---

[3] See, *e. g., Department of Navy, Navy Exchange* v. *FLRA,* 975 F. 2d 348 (CA7 1992); *FLRA* v. *Department of Veterans Affairs,* 958 F. 2d 503 (CA2 1992); *FLRA* v. *Department of Navy, Naval Communications Unit Cutler,* 941 F. 2d 49 (CA1 1991); *FLRA* v. *Department of Treasury, Financial Management Serv.,* 884 F. 2d 1446 (CADC 1989), cert. denied, 493 U. S. 1055 (1990).

panel majority reasoned that *Reporters Committee* "has absolutely nothing to say about . . . the situation that arises when disclosure is initially required by some statute other than the FOIA, and the FOIA is employed only secondarily." 975 F. 2d, at 1113.   In such cases, the court ruled that "it is proper for the federal court to consider the public interests embodied in the statute which generates the disclosure request."   *Id.*, at 1115.

Applying this approach, the court concluded that, because the weighty interest in public sector collective bargaining identified by Congress in the Labor Statute would be advanced by the release of the home addresses, disclosure "would not constitute a clearly unwarranted invasion of privacy."   *Id.*, at 1116.   In the panel majority's view, because Exemption 6 would not apply, FOIA would require disclosure of the addresses; in turn, therefore, the Privacy Act did not forbid the agencies to divulge the addresses, and the Authority's orders were binding.   *Ibid.*   The dissenting judge argued that *Reporters Committee* controlled the case and barred the agencies from disclosing their employees' addresses to the unions.   *Id.*, at 1116–1119 (Garza, J., dissenting).

We granted certiorari, 507 U. S. 1003 (1993), to resolve a conflict among the Courts of Appeals concerning whether the Privacy Act forbids the disclosure of employee addresses to collective-bargaining representatives pursuant to information requests made under the Labor Statute.

## II

Like the Court of Appeals, we begin our analysis with the terms of the Labor Statute, which governs labor-management relations in the federal civil service.   Consistent with the congressional finding that "labor organizations and collective bargaining in the civil service are in the public interest," 5 U. S. C. § 7101(a), the Labor Statute requires an agency to accord exclusive recognition to a labor union that

is elected by employees to serve as the representative of a bargaining unit. § 7111(a). An exclusive representative must represent fairly all employees in the unit, regardless of whether they choose to become union members. § 7114(a)(1). The Labor Statute also imposes a duty on the agency and the exclusive representative to negotiate in good faith for the purpose of arriving at a collective-bargaining agreement. § 7114(a)(4).

To fulfill its good-faith bargaining obligation, an agency must, *inter alia,* "furnish to the exclusive representative involved, or its authorized representative, upon request and, *to the extent not prohibited by law,* data . . . (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." § 7114(b)(4)(B) (emphasis added). The Authority has determined that the home addresses of bargaining unit employees constitute information that is "necessary" to the collective-bargaining process because through them, unions may communicate with employees more effectively than would otherwise be possible. See *Portsmouth,* 37 F. L. R. A., at 532 ("In the home environment, the employee has the leisure and the privacy to give the full and thoughtful attention to the union's message that the workplace generally does not permit"); *Farmers Home Admin. Finance Office,* 23 F. L. R. A. 788, 796–797 (1986). This determination, which has been upheld by several Courts of Appeals,[4] is not before us. Nor is there any dispute that the addresses are "reasonably available." Therefore, unless disclosure is "prohibited by law," agencies such as petitioners must release home addresses to exclusive representatives upon request.

Petitioners contend that the Privacy Act prohibits disclosure. This statute provides in part:

---

[4] See, *e. g., FLRA* v. *Department of Defense, Army and Air Force Exchange Serv.,* 984 F. 2d 370, 373 (CA10 1993); *Department of Veterans Affairs, supra,* at 507–508.

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . (2) required under section 552 of this title [FOIA]."   5 U. S. C. § 552a(b)(2) (1988 ed. and Supp. IV).

The employee addresses sought by the unions are "records" covered by the broad terms of the Privacy Act.   Therefore, unless FOIA would require release of the addresses, their disclosure is "prohibited by law," and the agencies may not reveal them to the unions.[5]

We turn, then, to FOIA.   As we have recognized previously, FOIA reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Department of Air Force* v. *Rose*, 425 U. S. 352, 360–361 (1976) (internal quotation marks omitted).   See also *EPA* v. *Mink*, 410 U. S. 73, 79–80 (1973).   Thus, while "disclosure, not secrecy, is the dominant objective of [FOIA]," there are a number of exemptions from the statute's broad reach. *Rose, supra*, at 361.   The exemption potentially applicable to employee addresses is Exemption 6, which provides that FOIA's disclosure requirements do not

---

[5] The written-consent provision of the Privacy Act is not implicated in this case.   The unions already have access to the addresses of their members and to those of nonmembers who have divulged this information to them.   It is not disputed that the unions are able to contact bargaining unit employees at work and ask them for their home addresses.   In practical effect, the unions seek only those addresses that they do not currently possess: the addresses of nonunion employees who have not revealed this information to their exclusive representative.

We also note that we are not asked in this case to consider the potential applicability of any other Privacy Act exceptions, such as the "routine use" exception.   See 5 U. S. C. § 552a(b)(3).   Respondents rely solely on the argument that the unions' requests for home addresses fall within the Privacy Act's FOIA exception.

apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(6).

Thus, although this case requires us to follow a somewhat convoluted path of statutory cross-references, its proper resolution depends upon a discrete inquiry: whether disclosure of the home addresses "would constitute a clearly unwarranted invasion of [the] personal privacy" of bargaining unit employees within the meaning of FOIA. For guidance in answering this question, we need look no further than to our decision in *Department of Justice* v. *Reporters Comm. for Freedom of Press*, 489 U. S. 749 (1989).

*Reporters Committee* involved FOIA requests addressed to the Federal Bureau of Investigation that sought the "rap sheets" of several individuals. In the process of deciding that the FBI was prohibited from disclosing the contents of the rap sheets, we reaffirmed several basic principles that have informed our interpretation of FOIA. First, in evaluating whether a request for information lies within the scope of a FOIA exemption, such as Exemption 6, that bars disclosure when it would amount to an invasion of privacy that is to some degree "unwarranted," "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect." *Id.*, at 776. See also *Rose, supra,* at 372.

Second, the only relevant "public interest in disclosure" to be weighed in this balance is the extent to which disclosure would serve the "core purpose of the FOIA," which is "contribut[ing] significantly to public understanding *of the operations or activities of the government.*" *Reporters Comm., supra,* at 775 (internal quotation marks omitted). We elaborated on this point at some length:

> "[FOIA's] basic policy of 'full agency disclosure unless information is exempted under clearly delineated statutory language' indeed focuses on the citizens' right to be informed about what their government is up to. Official

information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." 489 U. S., at 773 (quoting *Rose, supra,* at 360–361) (other internal quotation marks and citations omitted).

See also *Rose, supra,* at 372 (Exemption 6 cases "require a balancing of the individual's right of privacy against the preservation of the basic purpose of [FOIA] to open agency action to the light of public scrutiny") (internal quotation marks omitted).

Third, "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." *Reporters Comm.,* 489 U. S., at 771. Because "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document],'" *ibid.* (quoting *NLRB* v. *Sears, Roebuck & Co.,* 421 U. S. 132, 149 (1975)), except in certain cases involving claims of privilege, "the identity of the requesting party has no bearing on the merits of his or her FOIA request," 489 U. S., at 771.[6]

---

[6] Our decision in *Reporters Committee* turned on the applicability of FOIA Exemption 7(C) to the requests for "rap sheets." In pertinent part, Exemption 7(C) provides that "[FOIA] does not apply to matters that are . . . (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(7)(C). When we applied the FOIA principles discussed in the text, we concluded that "[t]he privacy interest in maintaining the practical obscurity of rap-sheet information will always be high," and that "the FOIA-based public interest in disclosure is at its nadir" when third parties seek law enforcement records concerning private citizens, given that those records would shed no light on the activities of government agencies or officials. *Reporters Comm.,* 489 U. S., at 780. Because the privacy interest outweighed the relevant

## III

The principles that we followed in *Reporters Committee* can be applied easily to this case. We must weigh the privacy interest of bargaining unit employees in nondisclosure of their addresses against the only relevant public interest in the FOIA balancing analysis—the extent to which disclosure of the information sought would "she[d] light on an agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to." *Reporters Comm., supra,* at 773 (internal quotation marks omitted; emphasis deleted).

The relevant public interest supporting disclosure in this case is negligible, at best. Disclosure of the addresses might allow the unions to communicate more effectively with employees, but it would not appreciably further "the citizens' right to be informed about what their government is up to." 489 U. S., at 773 (internal quotation marks omitted). Indeed, such disclosure would reveal little or nothing about the employing agencies or their activities. Even the Fifth

---

public interest, we held as a categorical matter that such records are excepted from FOIA's broad disclosure requirements by Exemption 7(C). *Ibid.*

Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that "could reasonably be expected to constitute" an invasion of privacy that is "unwarranted," while the latter bars any disclosure that "would constitute" an invasion of privacy that is "clearly unwarranted." Contrary to the view of the court below, see 975 F. 2d, at 1113, however, the fact that *Reporters Committee* dealt with a different FOIA exemption than the one we focus on today is of little import. Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions. As we shall see in Part III, *infra,* however, the dispositive issue here is the *identification* of the relevant public interest to be weighed in the balance, not the *magnitude* of that interest. *Reporters Committee* provides the same guidance in making this identification in Exemption 7(C) and Exemption 6 cases. See, *e. g., Department of State* v. *Ray,* 502 U. S. 164 (1991) (Exemption 6 case applying *Reporters Committee*).

Circuit recognized that "[r]elease of the employees' . . . addresses would not in any meaningful way open agency action to the light of public scrutiny." 975 F. 2d, at 1113.

Apparently realizing that this conclusion follows ineluctably from an application of the FOIA tenets we embraced in *Reporters Committee*, respondents argue that *Reporters Committee* is largely inapposite here because it dealt with an information request made directly under FOIA, whereas the unions' requests for home addresses initially were made under the Labor Statute, and implicated FOIA only incidentally through a chain of statutory cross-references. In such a circumstance, contend respondents, to give full effect to the three statutes involved and to allow unions to perform their statutory representational duties, we should import the policy considerations that are made explicit in the Labor Statute into the FOIA Exemption 6 balancing analysis. If we were to do so, respondents are confident we would conclude that the Labor Statute's policy favoring collective bargaining easily outweighs any privacy interest that employees might have in nondisclosure.

We decline to accept respondents' ambitious invitation to rewrite the statutes before us and to disregard the FOIA principles reaffirmed in *Reporters Committee*. The Labor Statute does not, as the Fifth Circuit suggested, merely "borro[w] the FOIA's disclosure calculus for another purpose." 975 F. 2d, at 1115. Rather, it allows the disclosure of information necessary for effective collective bargaining only "to the extent not prohibited by law." 5 U. S. C. § 7114(b)(4). Disclosure of the home addresses is prohibited by the Privacy Act unless an exception to that Act applies. The terms of the Labor Statute in no way suggest that the Privacy Act should be read in light of the purposes of the Labor Statute. If there is an exception, therefore, it must be found within the Privacy Act itself. Congress could have enacted an exception to the Privacy Act's coverage for information "necessary" for collective-bargaining purposes, but it

did not do so. In the absence of such a provision, respondents rely on the exception for information the disclosure of which would be "required under [FOIA]." § 552a(b)(2). Nowhere, however, does the Labor Statute amend FOIA's disclosure requirements or grant information requesters under the Labor Statute special status under FOIA.[7] Therefore, because all FOIA requesters have an equal, and equally qualified, right to information, the fact that respondents are seeking to vindicate the policies behind the Labor Statute is irrelevant to the FOIA analysis. Cf. *Reporters Comm.*, 489 U. S., at 771–772.

In her concurring opinion in *FLRA* v. *Department of Treasury, Financial Management Serv.*, 884 F. 2d 1446 (CADC 1989), cert. denied, 493 U. S. 1055 (1990), then-Judge Ginsburg cogently explained why we must reject respondents' central argument:

> "The broad cross-reference in 5 U. S. C. § 7114(b)(4)—'to the extent not prohibited by law'—picks up the Privacy Act unmodified; that Act, in turn, shelters personal records absent the consent of the person to whom the record pertains, unless disclosure would be required under the [FOIA].
>
> "Once placed wholly within the FOIA's domain, the union requesting information relevant to collective bargaining stands in no better position than members of the general public. True, unions have a special interest in identifying and communicating with persons in the bar-

---

[7] In this regard, see *Department of Veterans Affairs*, 958 F. 2d, at 512 ("Nowhere in the [Labor Statute] does its language indicate that the disclosure calculus required by FOIA should be modified. Nowhere do we find a qualification that the policies of collective bargaining should be integrated into FOIA"); *Department of Treasury*, 884 F. 2d, at 1453 ("Privacy Act exception b(2) speaks only of FOIA. We do not believe we are entitled to engage in the sort of imaginative reconstruction that would be necessary to introduce collective bargaining values into the [FOIA] balancing process").

gaining unit, an interest initially accommodated by [the Labor Statute]. The bargaining process facilitation interest is ultimately unavailing, however, because it 'falls outside the ambit of the public interest that the FOIA was enacted to serve,' *i. e.*, the interest in advancing 'public understanding of the operation or activities of the government.'" 884 F. 2d, at 1457 (quoting *Reporters Comm., supra,* at 775).

Against the virtually nonexistent FOIA-related public interest in disclosure, we weigh the interest of bargaining unit employees in nondisclosure of their home addresses. Cf. *Department of State* v. *Ray,* 502 U. S. 164, 173–177 (1991); *Rose,* 425 U. S., at 372. Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial.

It is true that home addresses often are publicly available through sources such as telephone directories and voter registration lists, but "[i]n an organized society, there are few facts that are not at one time or another divulged to another." *Reporters Comm., supra,* at 763. The privacy interest protected by Exemption 6 "encompass[es] the individual's control of information concerning his or her person." 489 U. S., at 763. An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form. Here, for the most part, the unions seek to obtain the addresses of nonunion employees who have decided not to reveal their addresses to their exclusive representative. See n. 5, *supra.* Perhaps some of these individuals have failed to join the union that represents them due to lack of familiarity with the union or its services. Others may be opposed to their union or to unionism in general on practical or ideological grounds.

Whatever the reason that these employees have chosen not to become members of the union or to provide the union with their addresses, however, it is clear that they have *some* non-trivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure.[8]

Many people simply do not want to be disturbed at home by work-related matters. Employees can lessen the chance of such unwanted contacts by not revealing their addresses to their exclusive representative. Even if the direct union/employee communication facilitated by the disclosure of home addresses were limited to mailings, this does not lessen the interest that individuals have in preventing at least some unsolicited, unwanted mail from reaching them at their homes. We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions. Cf. *Rowan* v. *United States Post Office Dept.*, 397 U. S. 728, 737 (1970); *Olmstead* v. *United States*, 277 U. S. 438, 478 (1928) (Brandeis, J., dissenting). Moreover, when we consider that other parties, such as commercial advertisers and solicitors, must have the same access under FOIA as the unions to the employee address lists sought in this case, see *supra*, at 496, 499, it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant.

---

[8] Even the Authority has recognized that "employees have some privacy interest in their home addresses." Brief for Federal Respondent 41 (citing *Department of Navy, Portsmouth Naval Shipyard, Portsmouth, N. H.*, 37 F. L. R. A. 515, 532 (1990)). The Courts of Appeals that have considered the question have reached the same conclusion, although they have differed in their characterization of the magnitude of the interest implicated. See, *e. g.*, *FLRA* v. *Department of Defense*, 977 F. 2d 545, 549 (CA11 1992) ("important" privacy interest); *FLRA* v. *Department of Navy*, 966 F. 2d 747, 759 (CA3 1992) (en banc) ("minimal" interest); *Department of Veterans Affairs, supra*, at 510 ("general privacy interest" in preventing dissemination of home address); *Department of Treasury, supra*, at 1453 ("significant" interest).

Because the privacy interest of bargaining unit employees in nondisclosure of their home addresses substantially outweighs the negligible FOIA-related public interest in disclosure, we conclude that disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(6). FOIA, thus, does not require the agencies to divulge the addresses, and the Privacy Act, therefore, prohibits their release to the unions.

## IV

Respondents argue that our decision will have a number of untoward effects. First, they contend that without access to home addresses, public sector unions will be unable to communicate with, and represent effectively, *all* bargaining unit employees. Such a result, they believe, thwarts the collective-bargaining policies explicitly embodied in the Labor Statute. See, *e. g.,* 5 U. S. C. § 7101(a) (congressional finding that "labor organizations and collective bargaining in the civil service are in the public interest"). According to respondents, it is illogical to believe that Congress intended the Privacy Act and FOIA to be interpreted in a manner that hinders the effectuation of the purposes motivating the Labor Statute.

Respondents, however, place undue emphasis on what they perceive to be the impulses of the Congress that enacted the Labor Statute, and neglect to consider the language in that statute that calls into play the limitations of the Privacy Act. Speculation about the ultimate goals of the Labor Statute is inappropriate here; the statute plainly states that an agency need furnish an exclusive representative with information that is necessary for collective-bargaining purposes *only* "to the extent not prohibited by law." 5 U. S. C. § 7114(b)(4). Disclosure of the addresses in this case is prohibited "by law," the Privacy Act. By disallowing disclosure, we do no more than give effect to the clear words of the provisions we

construe, including the Labor Statute. Cf. *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Second, respondents fear that our ruling will allow agencies, acting pursuant to the Privacy Act, to refuse to provide unions with other employee records, such as disciplinary reports and performance appraisals, that the unions need in order to perform their duties as exclusive bargaining representatives. This concern is not presented in this case, however, and we do not address it.

Finally, respondents contend that our decision creates an unnecessary and unintended disparity between public and private sector unions. While private sector unions assertedly are entitled to receive employee home address lists from employers under the National Labor Relations Act, as interpreted by the National Labor Relations Board,[9] respondents claim that federal sector unions now will be needlessly barred from obtaining this information, despite the lack of any indication that Congress intended such a result. See *Department of Treasury*, 884 F. 2d, at 1457–1461 (R. Ginsburg, J., concurring). We do not question that, as a general matter, private sector labor law may provide guidance in parallel public sector matters. This fact has little relevance here, however, for unlike private sector employees, federal employees enjoy the protection of the Privacy Act, and that statute prohibits the disclosure of the address lists sought in this case. To the extent that this prohibition leaves public sector unions in a position different from that of their private sector counterparts, Congress may correct the disparity. Cf. *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 499 (1985).

---

[9] See, *e. g.*, *NLRB* v. *Associated Gen. Contractors of Cal., Inc.*, 633 F. 2d 766, 773 (CA9 1980), cert. denied, 452 U. S. 915 (1981); *NLRB* v. *Pearl Bookbinding Co.*, 517 F. 2d 1108, 1113 (CA1 1975).

## V

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*So ordered.*

JUSTICE SOUTER, concurring.

I join the Court's opinion with the understanding that it does not ultimately resolve the relationship between the Federal Service Labor-Management Relations Statute (Labor Statute) and all of the Privacy Act of 1974 exceptions potentially available to respondents, and that any more general language in the opinion is limited, as the Court notes, to the relationship between the Labor Statute and the Freedom of Information Act exception to the Privacy Act at issue here. See *ante,* at 494, n. 5.

JUSTICE GINSBURG, concurring in the judgment.

Before this Court's decision in *Department of Justice* v. *Reporters Comm. for Freedom of Press,* 489 U. S. 749 (1989), every court to consider the issue presented in this case reached a conclusion opposing the one the Court announces today: The courts uniformly enforced, against Privacy Act challenges, Federal Labor Relations Authority (Authority) orders directing agencies to disclose the names and addresses of bargaining unit employees to the employees' exclusive bargaining representative.[1]   In these judgments, the Courts of Appeals deferred to the Authority's expert de-

---

[1] See *Department of Navy* v. *FLRA,* 840 F. 2d 1131 (CA3), cert. dism'd, 488 U. S. 881 (1988); *Department of Air Force, Scott Air Force Base* v. *FLRA,* 838 F. 2d 229 (CA7), cert. dism'd, 488 U. S. 880 (1988); *Department of Agriculture* v. *FLRA,* 836 F. 2d 1139 (CA8 1988), vacated and remanded, 488 U. S. 1025 (1989); *Department of Health and Human Services* v. *FLRA,* 833 F. 2d 1129 (CA4 1987), cert. dism'd, 488 U. S. 880 (1988).   See also *American Federation of Govt. Employees, Local 1760* v. *FLRA,* 786 F. 2d 554 (CA2 1986) (requiring FLRA to order disclosure).

termination that disclosure was necessary to vindicate the public interest in promoting federal-sector collective bargaining—the interest Congress identified when it enacted the Federal Service Labor-Management Relations Statute (Labor Statute).[2]

The Privacy Act interposed no bar to disclosure under the Labor Statute, these courts reasoned, because the Privacy Act allows disclosure when the Freedom of Information Act (FOIA) so requires, see 5 U. S. C. § 552a(b)(2), and the FOIA balancing of public interest in disclosure against the asserted privacy interest, see *ante*, at 495, tipped decisively in favor of disclosure. The public interest the Courts of Appeals balanced was the promotion of collective bargaining; the privacy interest, keeping employees' names and addresses from their bargaining representative.

*Reporters Committee*, however, changed the FOIA calculus that underlies these prodisclosure decisions. In *Reporters Committee*, the Court adopted a restrictive definition of the "public interest in disclosure," holding that interest to be circumscribed by FOIA's "core purpose": the purpose of "open[ing] agency action to the light of public scrutiny" and advancing "public understanding of the operations or activities of the government." 489 U. S., at 774–776 (internal quotation marks and emphasis omitted). As the Court observes today, disclosure of employees' home addresses to their bargaining representatives would not advance this purpose. See *ante*, at 497. With *Reporters Committee* as its guide, the Court traverses the "convoluted path of statutory cross-references," *ante*, at 495, from the Labor Statute to the Pri-

---

[2] See 5 U. S. C. § 7101(a) ("labor organizations and collective bargaining in the civil service are in the public interest"); § 7114(b)(4)(B) (agency must disclose information "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," unless disclosure is "prohibited by law").

vacy Act to FOIA, and the Court's journey ends in a judgment that disclosure is impermissible.[3]

The Court convincingly demonstrates that *Reporters Committee,* unmodified, requires this result. I came to the same conclusion as a judge instructed by the Court's precedent. See *FLRA* v. *Department of Treasury, Financial Mgmt. Service,* 884 F. 2d 1446, 1457 (CADC 1989) (concurring opinion), cert. denied, 493 U. S. 1055 (1990), quoted *ante,* at 499–500. It seemed to me then and seems to me now, however, that Congress did not chart our journey's end. See 884 F. 2d, at 1457–1461.

As this Court has recognized, in enacting the Labor Statute "Congress unquestionably intended to strengthen the position of federal unions." *Bureau of Alcohol, Tobacco and Firearms* v. *FLRA,* 464 U. S. 89, 107 (1983). It is surely doubtful that, in the very statute bolstering federal-sector unions, Congress aimed to deny those unions information their private-sector counterparts routinely receive. See, *e. g., Prudential Ins. Co. of Am.* v. *NLRB,* 412 F. 2d 77 (CA2), cert. denied, 396 U. S. 928 (1969); see also *NLRB* v. *Wyman-Gordon Co.,* 394 U. S. 759 (1969) (upholding National Labor Relations Board order requiring employer to disclose names and addresses before election). It is similarly doubtful that Congress intended a privacy interest, appraised by most

---

[3] The Court does not reach the issue whether the "routine use" exception to the Privacy Act, see 5 U. S. C. § 552a(b)(3), might justify disclosure. See *ante,* at 494, n. 5. The "routine use" exception is not a secure one for the unions, however, because it empowers agencies, in the first instance, to determine which uses warrant the classification "routine," and because courts ordinarily defer to agency assessments of this order. But cf. *United States Postal Service* v. *National Assn. of Letter Carriers,* 9 F. 3d 138, 143 (CADC 1993) (opinion of Silberman, J.) (suggesting that National Labor Relations Act disclosure obligations might compel the Postal Service "to publish a routine use notice that would accommodate its duties under that Act").

courts as relatively modest,[4] to trump the Legislature's firmly declared interest in promoting federal-sector collective bargaining. I do not agree with the Court, see *ante,* at 498–499, that the *Reporters Committee* rule yielding these anomalies is indubitably commanded by FOIA.[5]

The *Reporters Committee* "core purpose" limitation is not found in FOIA's language. A FOIA requester need not show in the first instance that disclosure would serve any public purpose, let alone a "core purpose" of "open[ing] agency action to the light of public scrutiny" or advancing "public understanding of the operations or activities of the government." Instead, "[a]n agency must disclose agency records to any person . . . 'unless [the records] may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b).' " *Department of Justice* v. *Tax Analysts,* 492 U. S. 136, 150–151 (1989), quoting *Department of Justice*

---

[4] Compare *FLRA* v. *Department of Navy, Navy Ships Parts Control Center,* 966 F. 2d 747, 759 (CA3 1992) (en banc) ("minimal" privacy interest); *FLRA* v. *Department of Navy, Navy Resale and Services Support Office,* 958 F. 2d 1490, 1496 (CA9 1992) ("minimal"); *FLRA* v. *Department of Veterans Affairs,* 958 F. 2d 503, 511 (CA2 1992) ("more than *de minimis*"); *FLRA* v. *Department of Navy, Naval Communications Unit Cutler,* 941 F. 2d 49, 56 (CA1 1991) ("modest"); *Department of Air Force, Scott Air Force Base* v. *FLRA,* 838 F. 2d 229, 232 (CA7) ("minuscule"), cert. dism'd, 488 U. S. 880 (1988); *Department of Agriculture* v. *FLRA,* 836 F. 2d 1139, 1143 (CA8 1988) ("modest"), vacated and remanded, 488 U. S. 1025 (1989); *American Federation of Govt. Employees, Local 1760* v. *FLRA,* 786 F. 2d 554, 556 (CA2 1986) ("not particularly compelling"), with *FLRA* v. *Department of Defense, Department of Navy, Pensacola Navy Exchange,* 977 F. 2d 545, 549 (CA11 1992) ("important").

[5] I do not question the result in *Reporters Committee,* shielding under FOIA exemption 7(C), 5 U. S. C. § 552(b)(7)(C), scattered bits of information relevant to criminal matters compiled in FBI "rap sheets." See *FLRA* v. *Department of Treasury, Financial Mgmt. Service,* 884 F. 2d 1446, 1460 (R. B. Ginsburg, J., concurring) ("privacy invasion threatened by release [to the union] of the bare names and addresses [of bargaining unit employees] pales in comparison to the privacy invasion threatened by [public] release of the rap sheet").

v. *Julian*, 486 U. S. 1, 8 (1988). In *Tax Analysts*, for example, the Court required disclosure of Department of Justice compilations of district court tax decisions to the publishers of Tax Notes, a weekly magazine. That disclosure did not notably "ad[d] . . . to public knowledge of Government operations." 492 U. S., at 156–157 (BLACKMUN, J., dissenting) (required disclosure "adds nothing whatsoever to public knowledge of Government operations").

Just as the FOIA requester confronts no "core purpose" obstacle at the outset, no such limitation appears in the text of any FOIA exemption. The exemption asserted in this case, for example, provides that an agency may withhold information if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(6). It is fully consistent with this statutory language to judge an invasion of personal privacy "warranted," courts held pre-*Reporters Committee*, even if the disclosure sought is unrelated to informing citizens about Government operations. Courts, on the issue before us, found disclosure in order because the information was deemed necessary by the expert Authority to vindicate an interest specifically identified by Congress in the Labor Statute—the interest in promoting federal-sector collective bargaining.

Such an interpretation is reconcilable with a main rule that the identity and particular purpose of the requester is irrelevant under FOIA. See *ante*, at 496. This main rule serves as a check against selection among requesters, by agencies and reviewing courts, according to idiosyncratic estimations of the request's or requester's worthiness. In the matter at hand, however, it is Congress that has declared the importance of the request's purpose, and Congress that has selected a single entity—the employees' exclusive bargaining representative—as entitled to assert that purpose. Allowing consideration of the public interest Congress has recognized would distinguish among potential requesters on the basis of the interest they assert, not simply their identity or

particular purpose. See *FLRA* v. *Department of Navy, Navy Resale and Services Support Office,* 958 F. 2d 1490, 1495 (CA9 1992) (cautioning against "confus[ing] the identity of the requester with the interest asserted by the requester").

I am mindful, however, that the preservation of *Reporters Committee,* unmodified, is the position solidly approved by my colleagues, and I am also mindful that the pull of precedent is strongest in statutory cases. See *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393, 406 (1932) (Brandeis, J., dissenting); *Di Santo* v. *Pennsylvania,* 273 U. S. 34, 42 (1927) (Brandeis, J., dissenting). I therefore concur in the Court's judgment, recognizing that, although today's decision denies federal-sector unions information accessible to their private-sector counterparts, "Congress may correct the disparity." *Ante,* at 503.