The Honorable Paul Suskie City Attorney 300 Main Street Post Office Box 5757 North Little Rock, Arkansas 72119
Dear Mr. Suskie:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), for an opinion on whether the City of North Little Rock's decision to release employment-related records of a former North Little Rock police officer, with certain information redacted, is consistent with the provisions of the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, the information requested includes "[t]he complete contents of the personnel file" of a former North Little Rock police officer and "[a]ny and all documents related, directly or indirectly, to the [the officer's] employment with the City of North Little Rock." The former employee in question has objected to release of the document, stating that "I feel my personnel/employment records should not be released due to the fact that I am no longer an employee of the City of North Little Rock" and that the records have been requested "for personal reasons that are not related to any criminal matters." You have enclosed with your request two sets each of approximately 250 pages of documents, one with proposed redactions and one un-redacted. I assume that you are seeking my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), as to whether the City's decision as to the indicated redactions is consistent with the FOIA.
RESPONSE
My duty under A.C.A. § 25-19-105(c)(3)(B)(i) (Supp. 2005) is to state whether the decision of the custodian of the records is consistent with the FOIA. In my opinion the City's decision to release personnel records with any necessary redactions is generally consistent with the FOIA. A different standard applies to "employee evaluation and job performance records" which can only be released if certain factors are present. In my opinion, although the City's decision as to release of the "personnel records" is generally consistent with the FOIA, the specific redactions made to the personnel records are not entirely consistent with the FOIA. There are a number of items encompassed within the redacted personnel records you enclose that the City has failed to properly redact. In addition, there is one type of personnel document appearing throughout the records you have enclosed that should not be withheld entirely, but rather, certain specific information appearing on this type of document should be redacted or excised. With regard to "employee evaluation and job performance records," in my opinion the City's decision is in large measure consistent with the FOIA, but the City is proposing to release some positive job performance records that are not subject to release under the applicable test. In addition, the records contain a job performance record dated December 2, 1999, which appears to meet the test for release under the applicable standard. I will set out the applicable tests and discuss the items at issue below.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the subject of the request is a former city employee, I believe documents containing the requested information clearly qualify as "public records" under this definition.
Two preliminary points should be discussed before reviewing your decision as to release of the records in question. First, with regard to former employee's objection to release based upon the fact that he is no longer employed with the City, I must note that I stated in Op. Att'y Gen. 2004-012 that "this office has consistently taken the position that `personnel records' are all records, other than employee evaluation/job performance records . . . that pertain to individual employees, formeremployees or successful job applicants. Id.
(emphasis added). See, also, Ops. Att'y Gen. 2001-122; 2000-130; and 99-147. See also, Op. Att'y Gen.2003-095 ("The `personnel records' provisions in the FOIA have been interpreted to apply to former employees" citing
Ops. Att'y Gen. 95-131 and 90-089). The fact that the officer is no longer an employee of the City does not dictate non-disclosure of the records.
Second, in response to the subject's objection that the records have been requested for "personal reasons that are not related to any criminal matters," I recently stated in Op. Att'y Gen.2006-165 that:
 I and my predecessors have consistently opined that the motive of an FOIA requestor is ordinarily irrelevant to the application of the balancing test. For example, in Op. Att'y Gen. 2003-325, the custodian proposed to withhold the resumes of several employees of a state institution based upon her perception that the records were not being requested for the purpose of obtaining information about the workings of government, but rather for the purpose of harassing the employees in question. I stated the following in response to this assertion:
 With regard to your contention that these records were not requested for the purpose of obtaining information about the workings of government, but rather for the purpose of harassing the employees in question, I must point out the long-held view that the motive of an FOIA requester is ordinarily irrelevant to the analysis. See, e.g., Op. Att'y Gen. No. 2002-067 ("[T]he balancing test under A.C.A. § 25-19-105(b)(12) does not turn upon the particular requester's motive in seeking the record where a public interest nevertheless exists in the information sought."). Accord, Ops. Att'y Gen. Nos. 2002-087; 98-186; 96-309; 92-289 and Watkins, THE FREEDOM OF INFORMATION ACT at 76 (m m Press, 3rd ed. 1998). This view is supported by U.S. Supreme Court precedent. In Department of Defense v. FLRA, 510 U.S. 487 (1994), the United States Supreme Court cited with approval language of an earlier case, Department of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749 (1989) to this effect: "`whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.' Reporters Comm., 489 U.S., at 771. Because Congress clearly intended the FOIA `to give any member of the public as much right to disclosure as one with a special interest [in a particular document]' [citation omitted] . . . `the identity of the requesting party has no bearing on the merits of his or her FOIA request.'" 510 U.S. 487, 496. The Court also stated that "all FOIA requestors have an equal, and equally qualified, right to information. . . ." Id. at 499. "Thus whether disclosure of a private document . . . is warranted must turn on the nature of the requested document and its relationship to `the basic purpose of the Freedom of Information Act to open agency action to the right of public scrutiny' [citation omitted] rather than on the particular purpose for which the document is being requested." Reporters Comm., 489 U.S. at 772. Justice Ginsburg, in her concurrence in FLRA, noted the reason for this rule: "[t]his main rule serves as a check against selection among requesters, by agencies and reviewing courts, according to idiosyncratic estimations of the request's or requester's worthiness." 510 U.S. at 508.
Id. at 5-6. See also, Ops. Att'y Gen. 2006-142 (opining that the motive of an FOIA requestor alleged to have been harassing a police officer and her family was irrelevant in applying the balancing test to determine whether officer's employment records were subject to release absent a controlling court order prohibiting release of the records); 2002-067 (distinguishingStilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998) and declining to consider the alleged political campaign motive of FOIA requestor in determining whether to release former state trooper's personnel records); and Opinion No. 2002-087(declining to interpret the Arkansas Supreme Court's decision in Stilley,supra as mandating a change in the long-held view that the motive of an FOIA requester is ordinarily irrelevant to the analysis, and that "for one reason or another, that decision should be restricted to it own facts"). The reasons of the requestor for seeking access to the record are therefore generally irrelevant to the analysis.
As my predecessor noted in Op. Att'y Gen. No. 1999-305, "If records fit within the definition of `public records' . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Id. at 2.
Records maintained with regard to a police officer's employment typically comprise both "personnel records" and "employee evaluation/job performance records" within the meaning of the FOIA. It is important for the custodian of the records to classify the records correctly because the standards for releasing these two types of records differ.
Although the FOIA does not define the term "personnel records," this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records (discussed below) that relate to an individual employee. See Ops. Att'y Gen. 2006-111; 2006-038; 2006-035; 2004-178; 2003-336; 2003-055; 2002-085; 2001-154; and 99-147.
Under the relevant statute, A.C.A. § 25-19-105, "personnel records" are open to public inspection and copying, except "to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2005).
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial.Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998).
With regard to the privacy side of the balancing test, the Arkansas Supreme Court has stated, relying on federal decisions, that there is a substantial privacy interest in records revealing the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. Stilley,supra, 332 Ark. at 311. With regard to the public interest side of the balancing test, the court in Stilley also discussed with approval an aspect of the balancing test used in Department ofDefense v. FLRA, 510 U.S. 487 (1994), which held that the Court's duty was to weigh the privacy interest of the employees at issue therein against the only relevant public interest in the FOI balancing analysis — the extent to which disclosure of the information sought would "shed light on an agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to." Id. at 312, quoting FLRA at 497.
The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact. Ops. Att'y Gen.2004-260; 2003-336; 2003-201; 2001-101; 98-001.
A number of documents contained in personnel files are typically releasable under this standard, with appropriate redactions. Ops. Att'y Gen. 2005-268; 2005-011; and 2004-058.
Employee evaluation or job performance records, on the other hand, are "any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employer in question with regard to a specific incident or incidents. See, e.g., Ops. Att'y Gen. 2006-111; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306 and 93-055.
"Employee evaluation or job performance records" are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
Both types of records, "personnel records" and "employee evaluation and job performance records" of the officer in question are enclosed with your request.
Although the decision of the City to release the redacted "personnel records" is generally consistent with the FOIA, in my opinion the redactions made by the City from this first category of records are not entirely consistent with the FOIA. In my opinion several additional redactions or the withholding of these items are required. These items include:
 1. Social security numbers appearing throughout the records you have enclosed. Although the City has redacted the former officer's social security number numerous times throughout the documents you have enclosed, the social security number of the officer appears in several places in un-redacted form. Un-redacted references to the officer's social security number appear on certain payroll forms, workers' compensation documents and education and training documents. I cannot stress strongly enough that the officer's social security number should be redacted anywhere it appears in the approximately 250 pages of documents at issue, and it should be redacted completely enough so that it is not still discernible to a recipient of the records. See Ops. Att'y Gen. 2006-165 (stating that "I have previously opined, in opinions too numerous to recount, that social security numbers of public employees are exempt from public disclosure. See, e.g., Ops. Att'y Gen. 2006-048; 2005-202; and 2001-080 (social security numbers must be redacted in accordance with federal law, citing 5 U.S.C. § 552a, note (the Federal Privacy Act); and 42 U.S.C. § 405(c)(2)(C)(viii))."
 2. Marital Status — This office has consistently opined that information concerning marital status is not disclosable under the A.C.A. § 25-19-105(b)(12) balancing test. See, e.g., Ops. Att'y Gen. 2006-176; 1998-152; 98-001. Accordingly, such information should be redacted from any records that are released. There are several un-redacted references to martial status in the records you have enclosed.
 3. Scores reflected on documents dated April 20, 1994 and November 6, 1993. See Ops. Att'y Gen. 2006-176; 2005-268; 2005-202; 2005-113; and 2004-178 ("This office has consistently opined that although the public has a valid interest in knowing that public employees possess a level of skill sufficient to perform their duties, information indicating specific scores is not necessary to satisfy this interest. See Ops. Att'y Gen. Nos. 2003-381; 2003-231; 2003-015; 2002-161; 2001-172; 2000-226; 2000-119; 99-016; 99-002; 97-177; 97-034; 97-033; 93-079; 89-054. . . .").
 4. Information about family life referenced on" Structured Interview" documents. See Ops. Att'y Gen. 2006-176; 2001-368; and 2001-080 (stating that such information is exempt under A.C.A. § 25-19-105(b)(12)).
 5. Retirement documents — ("LOPFI" documents) — See, e.g., Op. Att'y Gen. 2005-041 (". . . when applying th[e] [25-19-105((b)(12)] balancing test to personal financial information concerning items such as retirement benefits, the balance most often tips in favor of the individual's privacy interest in this information, and it should therefore be kept private"). See also, Op. Att'y Gen. Nos. 2002-043
and opinions cited therein.
 6. Personal financial information, insurance coverage and benefit information — See e.g., Op. Att'y Gen. No. 2002-043 ("My predecessors and I have taken the position that when th[e] [25-19-105(b)(12)] balancing test is applied to personal financial information concerning items such as insurance coverage and retirement benefits, the balance most often tips in favor of the individual's privacy interest in this information, and it should therefore be kept private." (Emphasis added). See also, Ops. Att'y Gen. 2005-113; 2001-112; 2001-080; 99-016; 96-134; 95-110; 94-234; 93-235; 87-442; 87-042. This type of information appears on various documents you have enclosed.
 7. Home Addresses of the former employee appearing throughout the records you have enclosed. In particular, addresses of the officer appear on numerous payroll records and in several "Change of Address" forms. Section 25-19-105(b)(13) (Supp. 2005) exempts from public inspection and copying "Home addresses of nonelected state employees, nonelected municipal employees, and nonelected county employees contained in employer records, except that the custodian of the records shall verify an employee's city or county of residence or address on record upon request . . ." The addresses of the former officer should thus be redacted anywhere they appear in the records at issue.
 8. Home Telephone Numbers — I have previously stated that home telephone numbers of police officers should be redacted under A.C.A. § 25-19-105(b)(12). See, e.g., Ops. Att'y Gen. 2005-202; 2003-115 and 2002-087.
 9. Photocopies of social security card and drivers' license — See Ops. Att'y Gen. 2006-048 and 2005-194 discussing the federal "Drivers' Privacy Protection Act").
 10. Arkansas Crime Information Center ("ACIC") information appearing in background investigation — See Op. Att'y Gen. 2005-113 (listing as exempt any other Arkansas Crime Information Center ("ACIC") records, citing A.C.A. § 12-12-211; and Ops. Att'y Gen. 2000-122; and 97-177.
On the other hand, you have proposed to redact or withhold certain information or documents constituting personnel records when, in my opinion, some of the information or records are subject to release under the A.C.A. § 25-19-105(b)(12) balancing test. Specifically, numerous documents entitled "City of North Little Rock Personnel/Payroll Maintenance Document" are in my opinion open to public inspection and copying so long as appropriate redactions have been made. These documents reflect salary and position information, the release of which does not give rise to a "clearly unwarranted invasion of personal privacy." See, e.g., Op. Att'y Gen. 2003-298 ("the public interest in obtaining salary information relating to public employees, including the identity of particular employees, outweighs the employees' privacy interests"). See also, Op. Att'y Gen. 2001-223 ("This office has consistently opined (in opinions too numerous to cite) that the disclosure of salary information does not constitute a clearly unwarranted invasion of the employee's personal privacy"). These forms also contain some information that should be redacted, however. Specifically, any references to social security number, address, home telephone number, date of birth, martial status and all references to payroll deductions for various purposes or insurance coverage should be redacted from these documents.
With regard to the second category of records typically found in personnel files, "employee evaluation and job performance records," in my opinion the City's decision to withhold release of any employee evaluation records that did not form a basis for a final suspension or termination is consistent with the FOIA. I must note, however, that in two instances, the City's decision with regard to the release of "employee evaluation or job performance records" is not consistent with the FOIA.
First, there is a job performance document dated December 2, 1999 that appears to meet the test for release of such records. You have proposed to withhold this record. Although I am not in possession of all the facts surrounding the creation or circumstances surrounding the document, it appears to meet the three-pronged test for the release of "employee evaluation or job performance records." As custodian you must make the initial determination as to whether each element of this test has been met in this instance.
Second, as I noted in Op. Att'y Gen. 2006-176, the City's decision to release numerous commendation documents written by the Chief of Police or former supervisors and documents reflecting awards given to the former officer is not consistent with the FOIA. As my predecessor noted in Op. Att'y Gen.2003-153, ". . . commendations written by the employer constitute the employee's employee evaluation/job performance records." Such records are not disclosable absent the occurrence of the factors necessary to meet the test for the release of job performance records. See Op. Att'y Gen. 96-005 (where police officer resigned as was neither suspended nor terminated, any listing of awards, commendations or reprimands he received would in all likelihood not be subject to disclosure). See also, Op. Att'y Gen. 99-016 (stating that "all other records in [a personnel] file that would constitute `employee evaluation/job performance records' — both positive and negative — are disclosable only if the . . . three conditions" for release of that category of record have been met). See also, Op. Att'y Gen. 89-368.
Although the result of this state of the law with reference to the documents you have enclosed is that certain records reflecting unfavorable job performance may be releasable, and documents reflecting favorable job performance are not releasable, I will only note that I and my predecessors have previously concluded in an analogous context that this rule is mitigated by the fact that the former employee has access to his own personnel and evaluation records under A.C.A. §25-19-105(c)(2) and may thus release any favorable records himself if he chooses to do so. See Ops. Att'y Gen. 96-257.See also Ops. Att'y Gen. 99-041 and 99-040 (stating that if the subject of the records believes that full disclosure of available records or information is not being made, he himself can make mitigating information available to the public).
In conclusion therefore, although the City's decision is in large measure consistent with the FOIA, there are several instances, detailed above, where the City's decision is inconsistent with the FOIA.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh