Ben BAKER, Plaintiff–Appellant,

v.

FEDERAL BUREAU OF INVESTI-GATION, Defendant–Appellee.

No. 16-4188

United States Court of Appeals, Seventh Circuit.

Argued May 19, 2017

Decided July 12, 2017

Matthew Topic, Attorney, Loevy & Loevy, Chicago, IL, for Plaintiff–Appellant.

Sarah J. North, Attorney, Office of the United States Attorney, Chicago, IL, for Defendant–Appellee.

Before WOOD, Chief Judge, and POSNER and KANNE, Circuit Judges.

POSNER, Circuit Judge.

This appeal challenges a district-court decision that dismissed with prejudice the plaintiff's suit against the FBI under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B). Initially the plaintiff, Baker, sued to obtain all records connected to an investigation in which he was interested, but the FBI gave him only redacted records, and so now he seeks disclosure of the redacted (i.e., hidden from him) names.

The records he sought and seeks involve an FBI investigation of a protection racket run by two Chicago police officers, Ronald Watts (a police sergeant) and Kallatt Mohammed, with the help of other officers. Watts and Mohammed were each charged in a single count of stealing money from an FBI informant in a sting operation. Watts, the ringleader, pleaded guilty to stealing thousands of dollars from a drug courier who was actually an FBI informant participating in the undercover sting operation, and was given a prison sentence of 22 months to be followed by a year of supervised release; he resigned from the Chicago police force.

■ The FBI has as noted produced redacted records of the investigation, but Baker seeks the release of three additional information categories: the names of FBI agents involved in the investigation, the names of any Chicago police officers who assisted them, and the names of the Chicago police officers who were investigated in connection with the racket but not charged. He contends that Watts's very light sentence relative to the magnitude of his criminal activity (Mohammed, also convicted, was sentenced to only 18 months) reflects inadequate investigation by the FBI and other law-enforcement personnel. He wants the names of *all* the law-enforcement officers involved in the investigation of the two officers revealed, as well as the names of the Chicago police officers who were investigated but not charged. He is indignant that Watts was charged with only one count of stealing money, despite the length of time he'd been running his criminal operation, and as a result of the single charge received so short a sentence, though since the guidelines sentence for Watts's crime was only 10 to 16 months he actually received an above-guidelines sentence.

The FBI resisted Baker's demand to open up the entire investigatory and prosecutorial campaign against the protection racket, by invoking two exemptions found in the Freedom of Information Act. One exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The other similarly exempts records and other infor-

mation compiled for law enforcement purposes if their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C)..

■ . The two exemptions differ only slightly, and Baker concedes that the differences are not relevant to his appeal. Deciding whether either exemption applies requires balancing the privacy interests of the affected persons against the public interest in the disclosure of the information. See *U.S. Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). The FBI's particular concern in seeking to conceal the information sought by Baker is that public identification of the identities and law-enforcement activities of the officers involved in the investigation of the Watts–Mohammed protection racket could endanger them by identifying them to gangsters still involved in the racket, while publication of the names of the Chicago police officers who were investigated but never charged with a crime would unfairly stigmatize those officers. And the FBI did after all give Baker records of investigatory activity relating to the prosecution of Watts and Mohammed, albeit without naming any of the personnel involved in that activity.

The FBI's personal-privacy arguments, although they are weighty, could be overcome by proof that the requested disclosure would be in the public interest to a degree outweighing privacy concerns. Baker's principal contention is that the single count brought against Watts—resulting in a correspondingly modest sentence—was manifestly inadequate, given that the protection racket headed by him had been on a large scale and had lasted for years. And that inadequacy, Baker points out, could conceivably be the result of indifference,

lack of attention to the seriousness of the problem, or worse.

He wonders whether the FBI, which was deeply involved in the investigation, assigned its most experienced and capable agents to the Watts case. But the FBI is purely an investigatory agency; it does not make charging decisions (e.g., what crimes to charge Watts with) or sentencing suggestions (e.g., what Watts's punishment should be). And many plausible explanations for the charging decisions are consistent with a thorough FBI investigation. The prosecutor may have considered other charges under consideration as unlikely to succeed, given the passage of time and the lack of credible witnesses. Or perhaps some officers who were under investigation are cooperating in ongoing FBI investigations. And Baker's theory that release of the names of the FBI agents who worked on the investigation would enable the public to determine whether the Bureau had adequately staffed the investigation with able and experienced agents is far-fetched.

As for the names of the Chicago officers who either assisted the FBI or were investigated but not charged, Baker argues that, under Illinois law, Illinois public officials have no expectation of privacy in "information that bears on [their] public duties." 5 ILCS 140/7(c). But this provision, which Baker relies on, is merely an exception to one of the categories of information exempt from disclosure under Illinois's Freedom of Information Act; it provides that "Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" is exempt from disclosure, but "disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." Baker gives us no reason to believe

that the Illinois Act determines the scope of FOIA exemptions, which are federal. The district court was correct, moreover, to express concern that disclosing the names of the Chicago officers could expose them to harassment without conferring an offsetting public benefit and would thus be an unwarranted invasion of their personal privacy.

Last Baker asks us to remand the case to the district court for consideration of whether to award him attorneys' fees on the ground that his suit had prompted the FBI to release extensive records that it had refused to produce until he sued. See *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013). As he never asked the district court to award attorneys' fees, there is no ruling on them for us to review—though as the district court's judgment did not forbid him to seek an award of attorneys' fees, he still can do so. See *Anderson v. U.S. Dep't of Health & Human Services*, 3 F.3d 1383, 1385 (10th Cir. 1993).

But for the reasons explained earlier the district court's grant of summary judgment in favor of the defendant is

AFFIRMED.