SHEET METAL WORKERS' INTER-
NATIONAL ASSOCIATION LO-
CAL UNION NO. 19

v.

UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS.

Civil Action No. 95–0935.

United States District Court,
E.D. Pennsylvania.

Sept. 14, 1995.

Charles T. Joyce, Spear, Wilderman, Borish, Endy, Browning & Spear, Philadelphia, PA, for Plaintiff.

Judith N. Dean, U.S. Attorney's Office, James G. Sheehan, Assistant U.S. Attorney–Civil Division, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

BECHTLE, District Judge.

Presently before the court are the Sheet Metal Workers' International Association Local Union No. 19's ("Plaintiff") and the United States Department of Veterans Affairs' ("Defendant") cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion will be *granted* and Defendant's motion will be *denied.*

### I. *BACKGROUND*

The material facts of this case are undisputed. In early 1994, Tri–State Design Construction Company ("Tri–State"), a private contractor, performed a contract with Defendant to renovate the roof at the Veterans Affairs Nursing Home in Wilmington, Delaware. Pursuant to the Davis–Bacon Act ("Davis–Bacon"), 40 U.S.C. §§ 276a *et seq.*, Tri–State was required to pay its employees wages not less than those determined by the Secretary of Labor to be prevailing in the geographic area of the project. 40 U.S.C. § 276a. In addition, pursuant to the Copeland Act, 40 U.S.C. § 276c, Tri–State was required to furnish weekly statements to Defendant with respect to the wages it paid to each employee during the preceding week. *Id.* Regulations promulgated by the Department of Labor under the Copeland Act required Tri–State to include in each statement detailed information about the employees on the project, including their names, home addresses, social security numbers, job classifications, hourly pay rate, number of hours worked, wages and fringe benefits paid, and deductions subtracted from their wages. 29 C.F.R. § 5.5(a)(3). Defendant had to enforce Tri–State's compliance with these standards and investigate contracts if necessary to ensure compliance. 29 C.F.R. § 5.6(a)(3).

Plaintiff is an unincorporated labor organization based in Philadelphia. (Compl. ¶ 4). Following Plaintiff's standard practice of monitoring whether federal agencies are en-

forcing private contractors' compliance with Davis–Bacon, organizer Donald G. Clagg ("Clagg") visited the roof renovation site on numerous occasions and witnessed several workers performing various types of sheet metal work. (Clagg Aff. ¶¶ 3–6, 13, 35). On March 4, 1994, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, Plaintiff requested from Defendant the weekly certified payroll statements, the apprentice registration forms submitted to Defendant by Tri–State, and a copy of the prevailing wage rate.[1] (Compl.Ex. A). On April 15, 1994, Defendant denied the request, stating that the certified payrolls were not public information and, therefore, not available under FOIA. (Compl.Ex. B). Plaintiff appealed this decision a month later. (Compl.Ex. C). On July 22, 1994, Defendant denied Plaintiff's appeal, concluding that the Tri–State workers had a substantial privacy interest in their names, addresses, wages and benefits information and that such information must be withheld under 5 U.S.C. § 552(b)(6). (Compl.Ex. D).

On February 16, 1995, Plaintiff filed this suit pursuant to FOIA, seeking (1) a declaratory judgment that Defendant is not entitled to withhold the certified payroll records under 5 U.S.C. § 552(b)(6); and (2) an injunction to compel disclosure of those records. In the alternative, Plaintiff requests that the court inspect the requested records *in camera* to determine whether portions may be exempt from public disclosure. Plaintiff also seeks attorneys' fees and costs pursuant to FOIA.

After the complaint was filed, Defendant provided Plaintiff's attorney with copies of the certified payrolls, but redacted the names and addresses of the employees and information relating to net wages. On a separate sheet of paper, Defendant gave Plaintiff a list of names of employees who were purportedly

employed by Tri–State on the renovation project. (Clagg Aff. ¶ 33; Cuesta Decl. ¶¶ 1–5). Plaintiff argues that this information is useless because it can not effectively monitor the accuracy of the payrolls unless it can match particular Tri–State employees to their work classifications and salaries. (Clagg Aff. ¶ 34). Plaintiff asserts that because these records fail to match the workers with their duties and the wages they received, it is unable to confirm the records with its personal on-site observations and interviews with Tri–State employees. *Id.* On June 7, 1995, Defendant sent Plaintiff a copy of the prevailing wage rate. (Wilson Decl. ¶ 6).

On March 27, 1995, Defendant moved for summary judgment, asserting that, under prevailing United States Supreme Court precedent, it was prohibited from disclosing the names, addresses, social security numbers, wage deductions and net wage information under 5 U.S.C. § 552(b)(6). Plaintiff filed a Cross–Motion for Summary Judgment a month later, arguing that the United States Court of Appeals for the Third Circuit's case, *International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev.*, 852 F.2d 87, 89 (3d Cir. 1988), governs this case and mandates release of the records.

## II. STANDARD FOR SUMMARY JUDGMENT

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a genuine issue of material fact is presented will be determined by ask-

---

1. With this information, Plaintiff claims that it can (1) find out whether the contractor is inflating the numbers of employees actually working on the job site; (2) check employees' job classifications as they are listed on the certified payrolls against the work it observes them performing on the job site; (3) determine whether the contractor is using the same employee for two different classifications on the same job; (4) check whether the rate of pay for a particular classification remains consistent over time; (5) determine whether the employer uses the proper ratio of mechanics to journeymen apprentices; (6) learn whether the apprentices are properly registered with the State Director of Apprenticeship and Training; and (7) determine whether and when apprentices are working out of their classification and, if they are, the rate of pay they receive. (Clagg Aff. ¶¶ 10–12).

ing if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the non-moving party has the burden to produce evidence to establish prima facie each element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Such evidence and all justifiable inferences that can be drawn from it are to be taken as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. However, if the non-moving party fails to establish an essential element of its claim, the moving party is entitled to a judgment dismissing that claim as a matter of law. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

The standards by which a court decides a summary judgment motion do not change when the parties file cross motions. *Southeastern Pa. Transp. Auth. v. Pennsylvania Pub. Util. Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993), *aff'd*, 27 F.3d 558 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 318, 130 L.Ed.2d 279 (1994). When ruling on cross motions for summary judgment, the court must consider the motions independently. *Williams v. Philadelphia Housing Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd* 27 F.3d 560 (3d Cir.1994), and view the evidence in each motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. *DISCUSSION*

### A. *Freedom of Information Act*

FOIA mandates that federal agencies promptly make available to the public any records that are the subject of a reasonable request. 5 U.S.C. § 552(a)(3). However, there are nine categories of exemptions to mandatory disclosure. Under Exemption 6, an agency may refuse to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). FOIA reflects a policy of full disclosure unless the information fits into one of the statutory exemptions, *Department of the Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976), and the burden is on the agency to justify its withholding of records, *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472–73, 103 L.Ed.2d 774 (1989). Defendant argues that it may withhold the Tri-State employees' names, addresses, and net pay information on the payroll records because such data fall within Exemption 6.

The Supreme Court has applied a balancing test to resolve Exemption 6 claims. Under this test, a court must weigh the public interest served by disclosure against the harm resulting from the invasion of privacy. *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495–97, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994); *Reporters Comm.*, 489 U.S. at 762, 109 S.Ct. at 1476; *Federal Labor Relations Auth. v. United States Dep't of the Navy*, 966 F.2d 747, 756 (3d Cir.1992). In this case, the court's task is to balance the privacy interest of the Tri-State employees in nondisclosure of the payroll information against "the extent to which disclosure … would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *United States Department of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 497, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (quotation omitted).

### B. *The Names and Home Addresses*

#### 1. **The Employees' Privacy Interest**

Just last year, in *Department of Defense*, the Supreme Court held that federal civil service employees have a "not insubstantial" privacy interest in their home addresses. 510 U.S. at 499–501, 114 S.Ct. at 1015. In that case, two unions requested the employees' names and home addresses from their employing agency under the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7105 ("Labor–Management Statute"). 510 U.S. at 491–94, 114 S.Ct. at 1011. The Court acknowledged that the pri-

vacy of the home is "accorded special consideration in our Constitution, laws and traditions," 510 U.S. at 501, 114 S.Ct. at 1015, but it never precisely quantified the employees' privacy interest in their home addresses. Rather, it stated that the collective bargaining unit employees' privacy interest in nondisclosure of their addresses is "not insubstantial" and "nontrivial." *Id.* This assessment overrules the Third Circuit's previous characterization of the interest as "meaningful." *Federal Labor Relations Auth. v. Department of the Navy,* 966 F.2d 747, 756 (3d Cir.1992).

The Tri–State employees' privacy interest in this case is weaker than the employees' interest in *Department of Defense.* In that case, the employees had decided not to provide the union's exclusive representative with their addresses. 510 U.S. at 499–501, 114 S.Ct. at 1015. This choice was an affirmative indication that they wanted their addresses to remain private. *Id.* No such selection was made by the Tri–State employees in this case and, therefore, their privacy interest is somewhat less than the "not insubstantial" interest in *Department of Defense.*

### 2. The Public Interest in Disclosure of the Addresses

In 1988, the Third Circuit decided a case almost identical to this one. *See International Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. and Urban Dev.,* 852 F.2d 87, 89 (3d Cir.1988) *("IBEW").* In *IBEW,* the union filed a FOIA action against the United States Department of Housing and Urban Development ("HUD"), requesting payroll records of a private nonunion subcontractor hired to perform work on a housing project that HUD financed with direct loans. 852 F.2d at 88. The union sought the information to monitor the subcontractor's compliance with, and

HUD's enforcement of, Davis–Bacon. *Id.* HUD released the payroll records but deleted the employees' names, home addresses and social security numbers, citing Exemption 6. *Id.*

The Third Circuit held that the social security numbers fell within Exemption 6 but that the names and addresses of the subcontractor's employees did not. *Id.* at 92. Because the release of names and addresses "makes it more likely" that contractors would comply with Davis–Bacon and "would facilitate" investigation of Davis–Bacon violations, the court reasoned, disclosure would open HUD's actions to the light of public scrutiny and was in the public interest. *Id.* at 90. In fact, the Court held that the public interest in the union's monitoring of HUD is

> exactly the kind of public interest Congress intended FOIA to facilitate. The public in general and organized labor in particular have a strong interest in determining whether HUD is doing the job Congress has directed it to do, and by enabling the Union to investigate possible Davis–Bacon Act violations, the release of the names and addresses would open HUD's actions "to the light of public scrutiny."

*Id.* at 91. The court emphasized that the union has a valuable role to play in ensuring that Davis–Bacon is properly enforced.[2] It stressed:

> If enforcement of the act is in the public interest, then more effective enforcement of the Act is also in the public interest. The Union has a strong self-interest in effective enforcement of the Act that coincides with the public interest, and there is every reason to believe that the Union will use the information it seeks to monitor compliance, to identify offending contrac-

---

2. Indeed, Plaintiff asserts that Defendant's Resident Engineer told Plaintiff that she had "little time to monitor projects to ensure their compliance with" Davis–Bacon. (Clagg Aff. ¶ 19). The Resident Engineer does not contradict this statement. She responds that a Project Engineer checks the number of workers on a job site to ensure that the payroll statements are accurate and compares the payrolls with daily log forms prepared by the contractor. (Wilson Decl. ¶ 4).

In addition, Plaintiff's previous monitoring activity has led to two investigations by the Department of Labor. As a result, employees of the contractor received the proper pay rate or back pay. (Clagg Aff. ¶¶ 23–24); *see IBEW,* 852 F.2d at 91 (noting that union, if it uncovered lax enforcement, might be able to sue for a mandatory injunction to compel HUD to enforce Davis–Bacon and could refer enforcement lapses to Congress, the media, the public, or the responsible agencies).

tors, and to bring those contractors to the attention of HUD and the Department of Labor.

*Id.* The Third Circuit, therefore, examined the relationship between the names and addresses and the purpose behind the request, namely to monitor HUD compliance with Davis–Bacon. Because the addresses would assist the IBEW by allowing it to contact the contractor's employees and verify the contractor's statements, the invasion of such privacy interests was not "clearly unwarranted" within the meaning of Exemption 6. *Id.*

The Supreme Court, a year after *IBEW*, elaborated on the public-private balancing test in *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In *Reporters Committee*, the Court held that FOIA's Exemption 7(A) [3] did not require the United States Department of Justice to disclose the FBI's criminal identification records of a citizen to a news correspondent and journalists' organization because the disclosure would reveal little or nothing about an agency's conduct. *Id.* at 773, 109 S.Ct. at 1481–82. The Court stated that disclosure turns on the "nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Id.* at 772, 109 S.Ct. at 1481 (quotations and citations omitted). Information fulfills the purpose of FOIA, the Court stressed, when it sheds light on an agency's performance of its statutory duties. *Id.* at 773, 109 S.Ct. at 1481–82. The Court emphasized that the information sought must contribute significantly to *"public understanding of the operations or activities of the government."* *Id.*

Although the Third Circuit decided *IBEW* eight months before *Reporters Committee*, the Third Circuit approached the public interest analysis the same way as the Supreme Court. Both courts focused exclusively on the tendency of the names and home addresses to shed light on the government's performance of its statutory duties. The *IBEW* court concluded that disclosure of such information would be an important tool in the union's practice of monitoring of federal agencies' compliance with Davis–Bacon. Thus, *Reporters Committee*, even though it prohibited the release of a citizen's criminal history records, did not overrule *IBEW's* conclusion that the release of the names and home addresses furthers the "strong" public interest in determining whether agencies are performing their duty to enforce Davis–Bacon.

In 1994, the Court again applied the public-private balancing test in *Department of Defense*, 510 U.S. 487, 114 S.Ct. 1006. In that case, two local unions requested names and home addresses of federal agency employees under a provision of the Labor–Management Statute that requires agencies to furnish unions with data that is necessary for collective bargaining purposes, unless disclosure of such data is otherwise "prohibited by law." 5 U.S.C. § 7114(b)(4). The agencies disclosed the employees' names and work stations, but withheld the home addresses, contending that the Privacy Act, 5 U.S.C. § 552a, barred disclosure of the personal information and that the information did not fall into the Privacy Act exception requiring disclosure of all information that fits into a FOIA exemption. 5 U.S.C. § 552a(b)(2).

The Court weighed the public and private interests at issue and held that the public interest in disclosure of home addresses of federal civil service employees to their collective-bargaining representative was "negligible, at best." The Court acknowledged that disclosure might facilitate union-employee communications, but that it would not "appreciably further 'the citizens' right to be informed about what their government is up

---

**3.** This exemption requires the federal agency to withhold "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Although *Reporters Committee's* balancing approach focused on Exemption 7(C), its standard for identifying the relevant public interest to be balanced is the same as in an Exemption 6 case. *Department of Defense*, 510 U.S. at 495–97 n. 6, 114 S.Ct. at 1013 n. 6 (citing *United States Department of State v. Ray*, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)).

to.' Indeed, such disclosure would reveal little or nothing about the employing agencies or their activities." *Id.* at 497, 114 S.Ct. at 1013–14 (quoting *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. at 1481–82). Because the addresses did not fall within FOIA's Exemption 6, they fell within the Privacy Act's non-disclosure provisions. Therefore, disclosure was "prohibited by law," notwithstanding the Labor–Management Statute.

*Department of Defense* is distinguishable from *IBEW* and the instant case for three central reasons. First, the public interest supporting disclosure in this case is far stronger. The unions in *Department of Defense* argued that the disclosure of the addresses would further the public interest in collective bargaining by enabling the unions' exclusive representative to communicate more effectively with employees than would otherwise be possible. 510 U.S. at 491–94, 114 S.Ct. at 1011. The Court held that, in the FOIA context, this public interest was "virtually non-existent" because disclosure of the addresses would not open agency action to the light of public scrutiny in any meaningful way.

In this case, like in *IBEW*, Plaintiff's receipt of the addresses will shed significant light on whether the government is properly enforcing Davis–Bacon. As stated above, the court stated that the union's monitoring of agency enforcement of Davis–Bacon was "exactly the kind of public interest Congress intended FOIA to facilitate." *IBEW*, 852 F.2d at 91. This finding contrasts starkly with the Court's finding of a "virtually nonexistent" interest in *Department of Defense.*[4]

Second, the public interest in this case is stronger than the one asserted in *Department of Defense*, because Defendant admits to a discrepancy on a payroll record submitted by Tri–State as part of its roofing contract with Defendant. Plaintiff contends that it visited the Tri–State roof renovation site

and witnessed sheet metal work being performed. (Clagg Aff. ¶ 35). The redacted payroll records supplied by Defendant, however, revealed that no employee worked under the sheet metal classification. *Id.* Defendant admits that some certified payrolls misclassified some sheet metal workers as "Roofers", but that these workers "were paid at a rate equal to or higher than the Sheet Metal Workers." (Wilson Decl. ¶ 3). Perhaps this is an isolated error. It could, however, "show that Davis–Bacon violations are not rare events," *IBEW*, 852 F.2d at 92. Even though only one error is apparent, many other hidden mistakes might be uncovered with even a cursory investigation.[5] Plaintiff may use the names and addresses of Tri–State employees as part of a mass mailing to ensure that contractors are fully complying with Davis–Bacon.

Third, in *Department of Defense*, the unions were provided with the names and work stations of the federal employees in the bargaining unit. Thus, the unions in that case still had a viable alternative means of contacting the bargaining-unit employees other than through their home addresses. In this case, there is no such alternative. Indeed, the *IBEW* court stated that contacting workers at their construction site is "not viable" because of the "transient nature of construction work." *IBEW*, 852 F.2d at 92.

In conclusion, this court rejects Defendant's argument that *Reporters Committee* and *Department of Defense* overruled the Third Circuit's *IBEW* decision because the facts in the two Supreme Court cases are distinguishable. In *Reporters Committee*, the Court held that the Department of Justice was prohibited from disclosing a citizen's criminal history records because the information shed no light on the agency's performance of its statutory duties. In *Department of Defense*, the Court held that two

---

**4.** Plaintiff does not explain exactly how it will use the employees' home addresses to monitor Defendant's enforcement of Davis–Bacon. However, the Third Circuit has approved the concept of a mass mailing to employees' home addresses as one method of checking up on federal agencies. A mass mailing is "likely to be significantly more effective" than distributing leaflets or at-

tempting to interview workers at the construction site. *IBEW*, 852 F.2d at 92.

**5.** Despite Defendant's oversight policy, see *supra* note 2, it missed the error in classification of the sheet metal worker. Instead, the Plaintiff, through its informal observations of the job site, caught the mistake.

unions' request for the names and home addresses of federal employees under the Labor–Management Statute furthered a "virtually non-existent" public interest because disclosure would shed no light on the agency's performance of its statutory duties. In *IBEW,* however, the Third Circuit stated in unambiguous language that monitoring an agency's enforcement of Davis–Bacon is a "strong" interest and "exactly the kind of public interest Congress intended FOIA to facilitate." Because this court is bound by Third Circuit precedent, it concludes that the public interest at issue here is a "strong" interest.

### 3. Balancing the Public and Private Interests

■ Applying *IBEW,* with helpful analysis from *Reporters Committee* and *Department of Defense,* to the facts of this case, the "not insubstantial" privacy interest of the employees in their names and home addresses is outweighed by the "strong" value that the release of such information would serve in ensuring that Defendant properly enforces Davis–Bacon. Defendant must disclose the employees' names and home addresses because disclosure would not constitute a clearly unwarranted invasion of personal privacy under Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6).

### B. The Employees' Wage Information

Defendant provided Plaintiff with the payroll records, but redacted the names, addresses, social security numbers, wage deductions and net wage information. (Cuesta Decl. ¶ 3). The payroll records reveal work classifications, dates and hours worked, hourly rates of pay and gross wages. (Cuesta Decl. ¶ 4). At the same time, Defendant gave Plaintiff a separate list of Tri–State employees named in the payroll records. (Cuesta Decl. ¶ 3). Plaintiff contends that this information is inadequate to monitor Defendant's compliance with Davis–Bacon because Plaintiff is unable to match workers to a particular job classification at a particular time and, thus, cannot confirm the accuracy

of the payrolls against on-site observations of, and interviews with, the workers. (Clagg Aff. ¶¶ 34, 37). Plaintiff seeks the records with employee names and job classifications, pay rate, number of hours worked, wages and fringe benefits paid, and deductions taken from the employees' wages.

### 1. The Employees' Privacy Interest

The Tri–State employees have a privacy interest in their salaries, but this interest is weaker than their privacy interest in their home addresses. *IBEW,* 852 F.2d at 89. Under Davis–Bacon, the contractor must post the wage scales of federal contractors' employees at the job site. 40 U.S.C. § 276a(a). This posting "reduces the workers' reasonable expectation of privacy in their salaries" even though the wage scales link wages with positions rather than names. *Id.*

### 2. The Public Interest in the Disclosure of the Wage Information

Plaintiff requests the payroll records revealing both the Tri–State employees' names with their job classification, dates and hours worked, hourly rates of pay and gross wages. As discussed above, the Third Circuit has held that, in the FOIA context, disclosure of names and addresses would open agency action to the light of public scrutiny. Wage information is especially important to Plaintiff's monitoring of Defendant's enforcement of Davis–Bacon because this data reveals whether Tri–State has paid prevailing wages to its workers.

### 3. Balancing the Public and Private Interests

■ Under the facts of this case, the Tri–State employees' reduced privacy interest in disclosure is outweighed by the strong value that the release of the wage information would serve in ensuring that Defendant enforces Davis–Bacon. Defendant must provide Plaintiff with the employees' wage data because disclosure would not constitute a clearly unwarranted invasion of personal privacy under Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6).[6]

6. For the same reason, Defendant must provide Plaintiff with the apprentice registration forms. Plaintiff's request was incorporated by reference

in its Complaint, (Compl. ¶ 6), and it has not, as of the date of the filing of its Motion for Summary Judgment, received these records, (Clagg

### C. Attorneys' Fees

 This court may assess reasonable attorneys' fees and other costs against the United States in any FOIA case in which the complainant has substantially prevailed. 5 U.S.C. § 552(a)(4)(E). Plaintiff has substantially prevailed in this action and is entitled to recover a portion of its attorneys' fees. Plaintiff, therefore, is directed to submit, within twenty (20) days, an application for fees, stating the number of hours billed, rate per hour, specific work performed, and total amount requested.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be denied, and Plaintiff's Motion for Summary Judgment will be granted.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 14th day of September, 1995, upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment, and the responses thereto, IT IS ORDERED that:

1) Plaintiff's motion is GRANTED;

2) Defendant's motion is DENIED;

3) judgment is entered for Plaintiff and against Defendant;

4) Defendant shall provide to Plaintiff, within thirty (30) days of the date of this Order, copies of the apprentice registration forms and certified payroll records for all employees submitted to Defendant by Tri–State Design Construction Co. for its 1994 renovation of the roof of the Veterans Affairs nursing home in Wilmington, Delaware, and Defendant shall redact only the social security numbers of the Tri–State employees and apprentices; and

5) Plaintiff has twenty (20) days to file an application for attorney's fees.

---

Aff. ¶ 36). In addition, neither Plaintiff nor Defendant specifically argued for or against disclosure of the registration forms in the memoranda of law or the responses thereto.

The strong public interest in Plaintiff's monitoring of Defendant's enforcement of Tri–State's compliance with Davis–Bacon outweighs the reduced privacy interest of the Tri–State workers in the apprentice registration forms. Therefore, the forms must be turned over to Plaintiff.