Ms. Anita Leslie c/o Booneville Human Development Center Post Office Box 327 Booneville, Arkansas 72927
Dear Ms. Leslie:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B), for my opinion on whether the release of certain records relating to the employees of the Booneville Human Development Center would be consistent with the Arkansas Freedom of Information Act ("FOIA"). Specifically, you report that an individual "has asked for all Human Development Center employees' names, race, job title, hourly wages and yearly salary." You specifically object to the release of these state employees' names and suggest that the individual should be required to disclose why he is seeking this information.
RESPONSE
My duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether a custodian's decision regarding the disclosure of requested documents is consistent with the FOIA. In the present case, you do not indicate what determination, if any, the custodian has made. However, I am able to opine as a general matter that the custodian should release any existing records that contain the requested information.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2003). Given that the subjects of the request are all state employees, I believe documents containing the requested information clearly qualify as "public records" under this definition.
As my predecessor noted in Op. Att'y Gen. No. 99-305:
 If records fit within the definition of "public records". . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law. The" unwarranted invasion of personal privacy" exemption is found in the FOIA at A.C.A. § 25-19-105(b)[12]. It exempts from public disclosure "personnel records to the extent that disclosure would constitute clearly unwarranted invasion of personal privacy."
 . . . The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record," within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel records" are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Att'y Gen. No. 99-147, citing Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd Ed., 1998) at 134.
Accord, Ark. Op. Att'y Gen. No. 2001-122.
In my opinion the records in question are "personnel records" for purposes of the FOIA. Under the relevant statute, A.C.A. § 25-19-105, "personnel records" are open to public inspection and copying, except "to the extent that disclosure would constitute "a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2003).
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice,308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the custodian must disclose the personnel records. As the court noted in Young:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
However, as the court noted in Stilley v. McBride, 332 Ark. 306, 312,965 S.W.2d 125 (1998), when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented." Id. at 313.
At issue, then, is whether disclosing documents that record employees' names, race, job titles, hourly wages and yearly salaries would amount to a "clearly unwarranted invasion of personal privacy." The fact that the subject of any such records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ark. Ops. Att'y Gen. Nos. 2001-112; 2001-022; 94-198; 94-178; and 93-055; Watkins, supra at 126.
In my opinion, documents reflecting this type of information are subject to inspection and copying under the FOIA. See e.g., Ops. Att'y. Gen.2004-202; 2002-257; 2002-107. I and my predecessors have consistently opined that basic employment information and salaries of public employees are subject to public inspection and copying. See e.g., Op. Atty. Gen.2003-298 and 2002-087. This office has further previously concluded that the names, races, dates of hire and job titles of public employees are subject to disclosure under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 95-012 and 91-351. The public interest in this type of information is substantial and any potential privacy interest does not outweigh it.
Specifically with respect to your objection to the disclosure of employees' names, I concur with the following analysis offered by my predecessor in Ark. Op. Att'y Gen. No. 2002-087:
 My predecessors and I have each opined that the names of public employees are generally subject to release under this [Young] test. See Ops. Att'y Gen. 90-335; 95-220 and 99-305. As stated in Opinion 90-335: "The `public' is the employer of these individuals, and pays their salaries. It is not unreasonable to expect that an employer would have an interest in knowing whom it employs." Id. at 5-6. See also,
Opinion No. 97-286 ("the identity of public employees is ordinarily a matter of significant public interest"). Additionally, as stated in Opinion No. 95-220, "courts have found relatively little privacy interest in records revealing names of public employees." As a general matter, therefore, the public interest in knowing the names of public employees will outweigh any privacy interest in the release of the names. In my opinion, therefore, the names of public employees are generally subject to disclosure.
I will further address your suggestion that the individual requesting the records should reveal his reasons for seeking their disclosure. In Ark. Op. Att'y Gen. No. 2002-087, my predecessor addressed this issue as follows:
 [T]he long-held view [is] that the motive of an FOIA requester is ordinarily irrelevant to the analysis. See Op. Att'y. Gen. 2002-067
(". . . the balancing test under A.C.A. § 25-19-105(b)(12) does not turn upon the particular requester's motive in seeking the record where a public interest nevertheless exists in the information sought"). See also, Ops. Att'y Gen. 98-186; 96-309; 92-289 and Watkins, The Freedom of Information Act at 76 (m m Press, 3rd ed. 1998). The United States Supreme Court in Department of Defense v. FLRA, supra cited with approval language of an earlier case, Department of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749 (1989), to this effect: "`whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.' Reporters Comm., 489 U.S., at 771. Because Congress clearly intended the FOIA `to give any member of the public as much right to disclosure as one with a special interest [in a particular document]' [citation omitted] . . . `the identity of the requesting party has no bearing on the merits of his or her FOIA request.'" 510 U.S. 487, 496. The Court also stated that "all FOIA requestors have an equal, and equally qualified, right to information. . . ." Id. at 499. "Thus whether disclosure of a private document . . . is warranted must turn on the nature of the requested document and its relationship to `the basic purpose of the Freedom of Information Act to open agency action to the right of public scrutiny' [citation omitted] rather than on the particular purpose for which the document is being requested." Reporters Comm., 489 U.S. at 772. Justice Ginsburg, in her concurrence in FLRA, noted the reason for this rule: "[t]his main rule serves as a check against selection among requesters, by agencies and reviewing courts, according to idiosyncratic estimations of the request's or requester's worthiness." 510 U.S. at 508.
Accordingly, I believe the custodian should release the requested information, redacting any other information contained in the documents that might be exempt from disclosure under the FOIA. I should note that the custodian will not be required to compile a document exclusively setting forth the requested information. See A.C.A. § 25-19-105(d)(2)(C) ("A custodian is not required to compile information or create a record in response to a request made under this section."); Ark. Op. Att'y Gen. No. 2004-018.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh