**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2453**

JOEL HAVEMANN,

                Plaintiff - Appellant,

        v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security
Administration,

                Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Ellen L. Hollander, District Judge.
(1:10-cv-01498-ELH)

Submitted:  June 12, 2013              Decided:  August 1, 2013

Before WILKINSON, KING, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Allan E. Feldman, SNIDER & ASSOCIATES, LLC, Baltimore, Maryland,
for Appellant.   Rod J. Rosenstein, United States Attorney,
Joseph R. Baldwin, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On March 10, 2010, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Appellant Joel Havemann filed six requests for information with the Social Security Administration (SSA). Per 5 U.S.C. § 552(a), the SSA was required "within 20 days after" receiving the request to (1) determine "whether to comply with [the] request" and (2) "immediately notify [Havemann] of [its] determination and the reasons therefor." Id. § 552(a)(6)(A)(i). The SSA sent Havemann six letters, dated March 16 and 17, 2010, acknowledging receipt of his requests and inviting him to inquire regarding their status if he did not hear from them in thirty days. On June 8, 2010, Havemann filed a complaint in the United States District Court for the District of Maryland, (1) alleging that the SSA had failed to comply with the deadlines imposed by 5 U.S.C. § 552(a)(6)(A) and (2) seeking "injunctive relief compelling the release and disclosure of the requested agency records." The SSA then provided the following notifications to Havemann regarding its disclosure determinations: On August 13, 2010, it sent Havemann a letter denying Requests I, II, and IV, and partially denying Request III; on September 10, 2010, it sent a letter asking for clarification regarding Request V; and on September 13, 2010, it sent a letter communicating that it would partially grant

2

Request VI. Later it reversed some of these determinations, but ultimately, as detailed below, it complied only partially with Havemann's requests. As to the information that it withheld, it moved for summary judgment, maintaining that "further disclosure would constitute a 'clearly unwarranted invasion of personal privacy' under 5 U.S.C. § 552(b)(6)." Havemann v. Astrue, No. 10-1498, 2012 WL 4378143, at *1 (D. Md. Sept. 24, 2012). The district court granted the motion, Havemann timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1331.

I.

Havemann is a free-lance journalist and filed his FOIA requests in conjunction with research for a story that he expects to publish in the National Journal. He is working with Ronald Cooley, a former SSA employee who is not a party to this case. According to Cooley, Havemann's story (or stories) "will take an in-depth look at the workings inside the SSA and, to a lesser degree, the [Veteran's Administration (VA)], as to their administration of certain of their benefit programs, and the relevant inter-agency interactions." This appeal involves three of Havemann's six requests—Requests I, II, and V.

A.

3

In Request I, Havemann sought information regarding married couples "where <u>both</u> members . . . were applying for and/or receiving Supplemental Security Income (SSI) benefits as an 'aged, blind or disabled individual with an eligible spouse' and where such benefits were denied or subsequently stopped because the couple also received a pension from the Department of Veterans Affairs." Said differently, Havemann sought records with the following three characteristics:

- The latest "type of master record"[1] is "aged, blind or disabled individual with eligible spouse";
- The record shows a denial of SSI for excess income in 1990 or later, or shows that the individual and spouse had been receiving SSI that was stopped in 1990 or later, due to excess income;
- The record shows that one or both members of the couple received, or began receiving, a VA benefit (pension or compensation) based on need.

Havemann's purpose for this request is to "shed light on the SSA's handling of a regulatory policy concerning war veterans and their spouses who receive a VA pension . . . and also file for SSI benefits."

The SSA released some of the information requested. Below, we delineate the requested versus released information in the same manner as the district court. The left column shows the

_____

[1] A "master record" is a code used to indicate relevant characteristics of the individual represented by that record.

4

information requested and the right column indicates to what extent the information was released.

| FOIA Request I (Veteran Couple Request) | |
|---|---|
| Data Requested | Data Released |
| Social Security Number (SSN) or alternative identifier | Alternative Identifier |
| Current or last shown "Master Record" | Yes |
| Full Name | No |
| Address with 9-digit zip code | No (only initial 5 digits of zip code released) |
| SSI application date | No |
| Code for most recent state and county of residence | No (only state code released) |
| Current SSI status | Yes |
| Reason for SSI denial | Yes |
| Denial Date | Yes |
| Date of status change due to excess income | Yes |
| Disability Payment Code[2] | Yes |
| Ledger Account File (LAF) Code[3] | Yes |
| Date of Birth | No (only year released) |
| Earned Income | Yes |
| Unearned Income | Yes |

Havemann challenges the SSA's withholding of the month and day of birth, and the SSI application date.

B.

---

[2] The "disability payment code" denotes the type of disability benefit awarded.

[3] The "ledger account file code" denotes the current payment status.

5

In Request II, Havemann sought information regarding individuals who were over age sixty-five, who were receiving or entitled to SSI payments, and whose "most recent SSI record show[ed] no current receipt of [Social Security] benefits." As to these individuals, Havemann also requested data indicating their date of enrollment in Medicare Part A and other Medicare information. Here, Havemann's purpose is "to shed light on the SSA's handling of referrals of SSI recipient[s] for Premium Part A Medicare . . . through the QMB [Qualified Medicare Beneficiary] Program." The SSA released some of the data that Havemann requested, as shown below:

| FOIA Request II (QMB Medicare Request) | |
|---|---|
| Data Requested | Data Released |
| SSN or alternative identifier | Alternative Identifier |
| Citizenship/alien status | Yes |
| Current or last shown "Master Record" | Yes |
| Address with 9-digit zip code | No (only initial 5 digits of zip code released) |
| SSI application date | No |
| Code for most recent state and county of residence | No (only state code released) |
| Individual Recipient Identification Code | Yes |
| Current Payment Status Code | Yes |
| Beneficiary Identification Code (BIC) | Yes |
| Date of Birth | No (only year released) |
| LAF Code | Yes |
| Most recent federal SSI amount payable | Yes |
| Most recent federally administered SSI state amount payable | Yes |
| Hospital insurance enrollment and supplemental medical insurance | Yes |

| information | |
|---|---|

Havemann challenges the SSA's withholding of the month and day of birth.

C.

In FOIA Request V, Havemann sought information regarding deceased "primaries" (i.e., individuals whose SSN number is recorded in the Master Beneficiary Record and on whose earnings the record is based) and the beneficiaries listed on their record, including the primary. Havemann's purpose for this request is "to assess and publicize how well the government is administering Title 38 of the United States Code, Veterans' Benefits." The chart below delineates the information that the SSA released.

| FOIA Request V (MBR Request) | |
|---|---|
| **Data Requested** | **Data Released** |
| SSN of the deceased primary record holder | No |
| BIC | Yes |
| Payment Identification Code | Yes |
| Sex of Beneficiary | Yes |
| SSI entitlement and termination dates | Yes |
| Code for most recent state and county of residence | No (only state released) |
| Primary Insurance Amount (PIA) | Yes |
| Month and year of PIA | Yes |
| 9-digit zip code | No |
| Date of birth | No (only year released) |
| LAF code | Yes |
| Monthly Benefit Amount (MBA) | No |
| Monthly Benefit Payment (MBP) | No |

| SSI benefit type | Yes |
| SSI status code | Yes |

Havemann challenges the withholding of the month and day of birth, the MBA, the MBP, the county code, and the zip code.

## II.

Although our standard of review for grants of summary judgment generally is de novo, Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011), where FOIA is involved, our review is limited to determining "(1) [whether] the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous." Spannaus v. Dept. of Justice, 813 F.2d 1285, 1288 (4th Cir. 1987) (quoting Willard v. Internal Revenue Serv., 776 F.2d 100, 104 (4th Cir. 1985)) (collecting cases)) (internal quotation marks omitted).

## A.

FOIA was enacted in 1967 as a means of "facilitating public access to [g]overnment documents." Its predecessor, Section 3 of the Administrative Procedure Act (APA), 5 U.S.C. § 1002 (1964), ostensibly existed for the same purpose but, as time passed, was viewed "more as a withholding statute than a disclosure statute." Dept. of Air Force v. Rose, 425 U.S. 352,

8

360 (1976) (quoting EPA v. Mink, 410 U.S. 73, 79 (1973)) (internal quotation marks omitted). "Congress therefore structured a revision whose basic purpose reflected 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" Id. at 360-61 (quoting S. Rep. No. 813, 89th Cong. 1st Sess., 3 (1965)). But Congress's desire "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," id. at 361 (quoting Rose v. Dept. of Air Force, 495 F.2d 261, 263 (2d Cir. 1974)) (internal quotation marks omitted), did not produce a statute that provides unfettered access to agency records. Rather, in its current form, FOIA reflects Congress's intent that the public's right to information be balanced against other competing interests. At issue here is the competing interest of privacy: Per 5 U.S.C. § 552(b)(6) (Exemption 6), an agency can refuse to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

B.

The parties do not dispute that Exemption 6 applies to the data at issue here. See U.S. Dept. of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) ("[W]e do not think that Congress meant

9

to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather '[t]he exemption [was] intended to cover detailed [g]overnment records on an individual which can be identified as applying to that individual.'" (second and third alterations in original) (quoting H.R. Rep. No. 1497 (1966), reprinted in 1966 U.S.C.C.A.N. 2428). Accordingly, we determine whether disclosing this data would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); see also Core v. U.S. Postal Serv., 730 F.2d 946, 947 (4th Cir. 1984) ("If the files fall within th[e] definition [of similar files,] the remaining issue is whether disclosure would constitute a clearly unwarranted invasion of personal privacy."). Making "[t]his determination requires 'a balancing of interest between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to government information.'" Id. at 948 (quoting S. Rep. No. 813).

1.

We think it obvious that the beneficiaries implicated by Havemann's requests have a privacy interest in the information that the SSA has collected about them. Individuals have a right to control dissemination of information about their person, even

10

if that "information may [already] be available to the public in some form." U.S. Dept. of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 500 (1994); see also U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 763–64 (1989) (recognizing that the concept of privacy "encompass[es] the individual's control of information concerning his or her person" and that "scattered disclosure of . . . bits of information" is different than wholesale dissemination of individuals' profiles that are compiled by the government and not otherwise "freely available" to the public). The more pressing question is whether release of the withheld data would enable identification of specific individuals and thus compromise beneficiaries' privacy.

Specific individuals obviously are identifiable through data that is exclusive to their person, such as a name, address, or social security number. Such data is termed a "unique identifier." At issue here are elements of data that are not unique identifiers, but that, according to the SSA, function as unique identifiers because they can be combined with other available information to identify specific individuals. The district court agreed with the SSA's categorization of this data and its decision to deny disclosure because of the possibility that the data could be used to single out certain beneficiaries. We find the district court's decision sound. The record

11

provided to this Court demonstrates that the SSA thoroughly analyzed and demonstrated the methods through which the withheld data could lead to the identification of specific individuals. The district court relied on the SSA's analysis, and we can ascertain no reason why it should not have done so. Moreover, Havemann's arguments to the contrary fall short because they focus on whether singular pieces of withheld data (e.g., month and day of birth, SSI application date, etc.) could lead to the identification of individuals rather than on whether those pieces of data working in combination with other information could assist in such identification.

Havemann faults the SSA's rationale for withholding this data, charging that it is speculative: "[T]he Agency withheld the date of birth from disclosure based on the premise that personal information **could lead** to identification of a living individual. However[,] the cases dealing with this issue hold that possibility of identification is not a sound bas[is] for nondisclosure." But Havemann's argument lacks merit. It is true that an agency cannot withhold information based on a "mere possibilit[y]" that an individual's privacy will be invaded. See Department of Air Force v. Rose, 425 U.S. 352, 378 (1976) ("The legislative history is clear that Exemption 6 was directed at threats to privacy interest more palpable than mere possibilities."). But it can withhold data if it demonstrates a

12

likelihood that releasing the information would connect private records to specific individuals. See Nat'l Ass'n of Retired Fed. Emp., 879 F.2d 873, 878 (D.C. Cir. 1989) ("Where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain. The concern . . . is not . . . with the number of steps that must be taken to get to the threatened effect; rather, [it is on] the likelihood that the effect will ever come to pass."). As noted above, the SSA conducted a thorough and careful demonstration of the effect that releasing the disputed data could have. As such, the district court did not err in concluding that disclosure of the data would implicate the beneficiaries' privacy interests.

2.

Having concluded that beneficiaries' privacy interests are at stake, we evaluate whether those interests are outweighed by the public's interest in disclosure. Per the Supreme Court, "the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dept. of Defense v. Fed. Labor Rel.

13

<u>Auth.</u>, 510 U.S. 487, 497 (1994) (quoting <u>Reporters Comm.</u>, 489 U.S. at 773).

Havemann's stated intent to evaluate the SSA's administration of various benefit programs fits within FOIA's goal of "shed[ding] light on an agency's performance of its statutory duties." But he fails to satisfactorily articulate how the withheld data aids his pursuits. In his brief to this Court, he avers that "to properly inform the public about SSA's operations and associated failures, [he] needs records and combinations of records that <u>pertain</u> to individuals." But the information that the SSA has already disclosed does relate to individuals, and Havemann does not indicate why it is insufficient. Havemann further maintains that "dates of birth are essential to identification of eligibility for certain categories of benefits." As noted by the district court, however, the SSA has explained that Havemann can achieve nearly 100% accuracy on eligibility determinations with access simply to the year of birth. Thus, it is unclear how access to the month and day of beneficiaries' birth will assist Havemann in any significant way.

Having reviewed the district court's decision and Havenmann's arguments, we are convinced that any interest the public may have in the withheld data is sufficiently outweighed by the privacy interests that would be compromised by such

14

disclosure. The public's interest in disclosure of the withheld data is negligible at best. The SSA has provided significant details for more than 140 million individuals, and such details appear sufficient to allow Havemann to conduct his analysis. To the extent that they are lacking, we do not believe that the marginal gains ostensibly possible through further disclosure are worth the burdens that will likely result to beneficiaries' privacy interests. Accordingly, we conclude that the district court "had an adequate factual basis for the decision [it] rendered" and that its decision was not clearly erroneous. Spannaus, 813 F.2d at 1288. Thus, we affirm the district court's grant of summary judgment to the SSA.

## III.

Havemann contends that he is entitled to attorney's fees and costs and that the district court erred in denying his motion to this effect. Per 5 U.S.C. § 552(a)(4)(E), "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." A complainant "substantially prevail[s]" in a case when he proves that "(1) his filing of the FOIA action was necessary to obtain the information sought and (2) the action had a 'substantial causative effect' on the ultimate receipt of

15

that information." Long v. U.S. I.R.S., 932 F.2d 1309, 1313 (9th Cir. 1991). Here, Havemann did not "substantially prevail[]" in his opposition to the SSA's summary judgment motion. Thus, he is not entitled to attorney's fees connected with that endeavor. He appears to argue, however, that he is entitled to the fees associated with filing his complaint on June 8, 2010, because, as noted above, although the SSA acknowledged his requests for information within the timeframe outlined in section 552(a)(6)(A), it failed to communicate its determinations regarding disclosure within that timeframe. The filing of the complaint thus arguably "was necessary to obtain the information [Havemann] sought" and "had a 'substantial causative effect' on the ultimate receipt of [the] information" that the SSA did disclose. Id. We decline to explore this argument further, however, because, as the SSA points out, Havemann failed to comply with the requirements of Federal Rule of Civil Procedure 54 regarding claims for attorney's fees. Rule 54 requires that "[a] claim for attorney's fees . . . be made by motion"; "be filed no later than 14 days after the entry of judgment"; "specify the judgment and the statute, rule, or other grounds entitling the movant to the award"; "state the amount sought or provide a fair estimate of it"; and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P.

16

54(d)(2)(A)-(B). Havemann made no such motion. We recognize that in his "Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment," Havemann argued that he was entitled to attorney's fees because the SSA did not provide a substantive response to his request until after he filed his complaint in this action. But even if we reckon this argument sufficient to comply with Rule 54's requirement that "[a] claim for attorney's fees . . . be made by motion," Fed. R. Civ. P. 54(d)(2)(A), we cannot ignore Havemann's failure to "state the amount sought or provide a fair estimate of it," Fed. R. Civ. P. 54(d)(2)(B)(iii). Because Havemann failed to make a proper plea for attorney's fees before the district court, the district court did not err in denying his request.

IV.

For the reasons stated above, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

<u>AFFIRMED</u>

17